IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

MANDY BIGELOW,

    Plaintiff,

v.

ANDREW SAUL, Commissioner of Social Security,

    Defendant.

CIVIL ACTION NO.: 5:18-cv-70

**ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff contests the decision of Administrative Law Judge Geoffrey S. Casher ("the ALJ" or "ALJ Casher") in denying her claims for period of disability, disability insurance benefits, and supplemental security income. Plaintiff urges the Court to reverse and remand the Administrative Law Judge's decision. Doc. 17 at 19. Defendant asserts the Commissioner's decision should be affirmed. Doc. 18 at 5. For the reasons which follow, I **RECOMMEND** the Court **AFFIRM** the Commissioner's decision and **DIRECT** the Clerk of Court to **CLOSE** this case and enter an appropriate judgment of dismissal.

**BACKGROUND**

On April 15, 2015, Plaintiff filed an application for a period of disability and disability insurance benefits. Doc. 13-5 at 9–16 (R. 168–74). Plaintiff also filed an application for supplemental social security income on May 8, 2017. Id. at 22–28 (R. 181–86). In both applications, Plaintiff alleged disability beginning on February 4, 2013. Id. at 9, 22 (R. 168, 181). After her claim was initially denied and upon reconsideration, Plaintiff filed a timely request for a hearing. Doc. 13-2 at 17 (R. 16). On July 21, 2017, ALJ Casher conducted a

video hearing at which Plaintiff appeared and testified from Waycross, Georgia.  Id.  Dennis P. Conroy, a vocational expert, also appeared at the hearing.  Id.  On December 6, 2017, the ALJ issued a partially favorable decision, finding Plaintiff was disabled from February 4, 2013 through October 19, 2015, but beginning on October 20, 2015, she was not disabled.  Id. at 28 (R. 27).  The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review.  Id. at 2–7 (R. 1–6).

Plaintiff, born on October 31, 1989, was 28 years old when ALJ Casher issued his final decision.  Id. at 29 (R. 28); Doc. 13-5 at 9 (R. 168).  She has at least a high school education and is able to communicate in English.  Doc. 13-2 at 25 (R. 24).  Plaintiff's past relevant work experience includes work as a home health aide, fast food worker, cashier, and salesclerk.  Id. at 24 (R. 23).

## DISCUSSION

### I.     The ALJ's Initial Findings

The ALJ determined Plaintiff was disabled from February 4, 2013 through October 19, 2015.  Id. at 28 (R. 27).  The ALJ's analysis in reaching this conclusion is discussed in this section as background information, and Plaintiff does not dispute these findings.  The ALJ's finding of non-disability, which Plaintiff is disputing, is discussed in the next section.

As noted, Plaintiff filed both a Title II application for period of disability benefits and a Title XVI application for supplemental security income.  Id. at 17 (R. 16).  Titles II and XVI of the Act define "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

twelve months." 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Title II and Title XVI of the Act contain identical five-step processes to determine whether a person meets the definition of disabled. See 20 C.F.R. § 404.1520 (determining disability under Title II of the Act); 20 C.F.R. § 416.920 (determining disability under Title XVI of the act).

The first step determines if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(d), 416.920(a)(4)(iii); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Bowen v. Yuckert, 482 U.S. 137, 141 (1987).

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013). A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite [her] impairments." Stone, 503 F. App'x at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to make adjustments to other work in the national economy, considering her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, ALJ Casher applied the above-mentioned framework and determined Plaintiff was disabled from February 4, 2013 through October 19, 2015. Doc. 13-2 at 28 (R. 27). Plaintiff does not dispute this finding.

**II. The ALJ's Finding that Medical Improvement Occurred as of October 20, 2015 and that Plaintiff was no Longer "Disabled" Within the Meaning of the Act**

In addition to finding Plaintiff was disabled from February 4, 2013 through October 19, 2015, ALJ Casher determined Plaintiff medically improved and was no longer disabled as of October 20, 2015. Id. Plaintiff does dispute these findings. Doc. 17 at 2. This section discusses how ALJ Casher made this determination.

After a person is found to be entitled to disability benefits, the Commissioner is required to periodically review whether continued entitlement to such benefits is warranted. 20 C.F.R. §§ 404.1594(a), 416.994(a). Although it is called a periodic review, in many cases it acts more

4

like a bookend. Here, the ALJ is looking retroactively to determine if a plaintiff's disability status changed from the initial date of disability through the time of his ruling. ALJ Casher's "initial determination" found Plaintiff disabled as of February 4, 2013. Doc. 13-2 at 25 (R. 24). After this initial determination, the ALJ must then look at the record to determine if at any point (between the onset date and the time of the ruling) the plaintiff no longer qualified as disabled. This continuing review proceeds under a slightly different framework than the initial determination. If the plaintiff's disability is found to have ended, the plaintiff is still entitled to benefits from the date of onset to the disability end date.

As Plaintiff was initially entitled to benefits under both Titles II and XVI, the Commissioner is required to review her eligibility under each Title. Independent of the initial determination process, the Commissioner has established separate multi-step sequential evaluation processes for each Title to determine whether a person's disability has ended. 20 C.F.R. §§ 404.1594(f) (Title II), 416.994(b)(5) (Title XVI). These multi-step continuing disability review processes are similar to the five-step initial evaluation process, with additional attention as to whether there has been medical improvement. Compare 20 C.F.R. § 404.1520 and 416.920, with 20 C.F.R. §§ 404.1594(f), 416.994(b)(5). Determination of whether a person's eligibility has ended for disability benefits involves an eight-step process under Title II and a seven-step process under Title XVI. 20 C.F.R. §§ 404.1594(f)(1)–(8); 20 C.F.R. § 416.994(b)(5)(i)–(vii). Title II has an additional step that Title XVI does not. The first step of the Title II analysis addresses whether the plaintiff is engaging in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). Aside from this first step in Title II, steps two through eight of Title II are identical to steps one through seven of Title XVI. In the interest of clarity, the full eight

5

steps are summarized below, keeping in mind step two of Title II corresponds with step one of Title XVI and continuing.

The first step (found only in Title II) addresses whether the plaintiff is engaging in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). If not, step two determines whether the plaintiff has an impairment or combination of impairments that meet or equal the severity of listed impairments set forth at 20 C.F.R. pt. 404, Subpt. P, app. 1. 20 C.F.R. §§ 404.1520(d), 404.1594(f)(2), 416.920(d), 416.994(b)(5)(i). If the impairment does not equal a listed impairment, the third step addresses whether there has been medical improvement in the plaintiff's condition. 20 C.F.R. §§ 404.1594(f)(3), 416.994(b)(5)(ii). Medical improvement is "any decrease in the medical severity" of the impairment that was present at the time the individual was disabled or continued to be disabled. 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i). If there has been medical improvement, at step four, a determination is made whether such improvement is related to the plaintiff's ability to perform work—that is, whether there has been an increase in the individual's residual functional capacity. 20 C.F.R. §§ 404.1594(f)(4), 416.994(b)(iii). If the answer to step four is yes, the Commissioner skips to step six and inquires whether all of the plaintiff's current impairments in combination are severe. If there has been no medical improvement or medical improvement is not related to the plaintiff's ability to work, the evaluation proceeds to step five. At step five, consideration is given to whether the case meets any of the special exceptions to medical improvement for determining that disability has ceased. 20 C.F.R. §§ 404.1594(f)(5), 416.994(b)(5)(iv). At step six, if medical improvement is shown to be related to the plaintiff's ability to work, a determination will be made to assess whether the plaintiff's current impairments in combination are severe— that is, whether they impose more than a minimal limitation on the claimant's physical or mental

ability to perform basic work activities.  20 C.F.R. §§ 404.1594(f)(6), 416.994(b)(5)(v).  If the answer to that inquiry is yes, at step seven, the ALJ must determine whether the plaintiff can perform past relevant work.  20 C.F.R. §§ 404.1520(e), 404.1594(f)(7), 416.994(b)(5)(vi), 416.920(e); SSR 82-61, 1982 WL 31387.  If the plaintiff has the capacity to perform past relevant work, her disability has ended.  If not, the analysis proceeds to the last step.  At step seven, the burden to prove disability and continuing entitlement to disability benefits is on the plaintiff.  20 C.F.R. §§ 404.1594, 416.994; cf. Yuckert, 482 U.S. at 146 n.5.  The Commissioner must consider all evidence without regard to prior findings, and there must be substantial evidence that medical improvement has occurred.  42 U.S.C. §§ 423(f)(1), 1382c(a)(4).  The Commissioner views the evidence in a continuing disability review from a neutral perspective, without any initial inference as to the existence of disability being drawn from a prior finding of disability.  42 U.S.C. §§ 423(f)(1), 1382c(a)(4).

At step eight, if the plaintiff cannot perform past relevant work, the burden shifts to the Commissioner to establish that: (1) the plaintiff is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1594(f)(8), 416.994(b)(5)(vii); cf. Yuckert, 482 U.S. at 146 n.5; and Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir. 2012) (applying the same burden at the initial disability determination); 20 C.F.R. §§ 404.1594(f)(8), 416.994(b)(5)(vii).  If the plaintiff cannot perform a significant number of other jobs, she remains disabled despite medical improvement; if, however, she can perform a significant number of other jobs, disability ceases.  20 C.F.R. §§ 404.1594(f)(8), 416.994(b)(5)(vii).

The ALJ's findings at step one of the continuing review were consistent with his findings at step one of the initial disability determination, that Plaintiff did not engage in substantial

gainful activity since February 4, 2013.  Doc. 13-2 at 21 (R. 20).  At step two, the ALJ determined, as of October 20, 2015, Plaintiff's impairments did not meet or medically equal the severity of a listed impairment.  Id. at 26 (R. 25).  At step three, the ALJ determined there had been medical improvement in Plaintiff's condition.  Id.  At step four, the ALJ found the medical improvement that had occurred was related to Plaintiff's ability to work, as there had been an increase in her residual functional capacity.  Id.  Specifically, the ALJ found that between February 4, 2013 and October 19, 2015, Plaintiff had the residual functional capacity to perform a reduced range of sedentary work; however, beginning in October 20, 2015, she had the residual functional capacity to perform a reduced range of light work.  Id. at 23, 26 (R. 22, 25).  This change in residual functional capacity was significant to the ALJ's finding Plaintiff's disability ended.

As the Regulations dictate, if it is found that the medical improvement is related to the plaintiff's ability to work, the ALJ should skip to step six in the sequential analysis.  At step six, if medical improvement is shown to be related to the plaintiff's ability to work, a determination will be made to assess whether the plaintiff's current impairments in combination are severe— that is, whether they impose more than a minimal limitation on their physical or mental ability to perform basic work activities.[1]  20 C.F.R. §§ 404.1594(f)(6), 416.994(b)(5)(v).  The ALJ, in making his initial disability determination, found Plaintiff had a number of severe impairments, which the Court detailed.  In making the determination at step six, the ALJ noted Plaintiff still has "one or more 'severe' impairments."  Doc. 13-2 at 26 (R. 25).  The ALJ also detailed a number of limitations on Plaintiff's ability to work.  Id.

---

[1] The determination of severity in step six of the Title II evaluation is identical to the determination of severity at step two of the initial disability entitlement.  3 Soc. Sec. Disabilities Claims Prac. & Proc. § 30:9 (2d ed.)

8

However, at step seven, the ALJ determined Plaintiff was capable of performing past relevant work beginning on October 20, 2015. Id. at 28 (R. 27). Accordingly, the ALJ found that, beginning in October 20, 2015, Plaintiff was no longer disabled and had not become disabled again since that date. Id.

### III.  Issues Presented

Plaintiff contends the ALJ made two errors. First, Plaintiff contends the ALJ erred in improperly discounting or failing to give proper weight to the opinion of Dr. Kevin Coyle, Plaintiff's long-time pain management specialist. Doc. 17 at 2. Plaintiff argues the ALJ did not provide a valid reason to reject Dr. Coyle's opinions regarding Plaintiff's postural limitations or how many unplanned work absences she would need per month. Id. at 8. Further, Plaintiff argues, if the ALJ properly considered Dr. Coyle's opinions, he would have found no medical improvement and an inability to work eight hours a day, five days a week as of October 20, 2015. Id. at 12.

Second, Plaintiff argues the ALJ erred in failing to address the statements of Mr. Paul McCarty, Plaintiff's boyfriend, in the decision in this case. Id. at 18. Plaintiff contends the ALJ was required to consider all evidence before him. Id. Plaintiff argues Mr. McCarty's statement provides first-hand information on Plaintiff's limitations and how they impact her everyday life. Id. Plaintiff contends these statements would bolster Plaintiff's own statements about her condition and lead the ALJ to conclude she was still disabled. Id.

### IV.  Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936

9

F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* Lane v. Astrue, No. 8:11-CV-345-T-27, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

## V. Whether Substantial Evidence Supports ALJ Casher's Decision to Give Partial Weight to the Opinions of Dr. Coyle

Plaintiff contends ALJ Casher improperly discounted the opinions of Dr. Kevin Coyle, Plaintiff's long-time pain management specialist. Doc. 17 at 7. Plaintiff asserts this error caused ALJ Casher to incorrectly find that Plaintiff was able to work eight hours a day, five days a week. Id. at 8. Plaintiff further contends the ALJ failed to base his finding that she had medically improved upon any medical opinion. Id.

Defendant argues the ALJ carefully considered evidence from Dr. Coyle. Doc. 18 at 5, 8. Defendant also contends the ALJ properly explained his reasons for giving only partial weight to Dr. Coyle's opinions, mainly because Dr. Coyle's findings were inconsistent with other examinations, the opinions of State agency doctors Arthur Lesesne and Maureen Muoneke, and the medical record as a whole. Id. at 6, 8–10.

Medical opinions are statements from physicians or other medical sources that reflect judgments about the nature and severity of impairments, including symptoms, diagnoses, what the applicant can still do despite the impairments, and any physical or mental restrictions. See 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). The Social Security Regulations provide guidelines for an ALJ to employ when evaluating medical evidence. See 20 C.F.R. §§ 404.1527, 416.927. When determining the weight to give a physician's opinion, an ALJ may consider numerous factors, including the physician's specialization, whether the physician examined the claimant, whether the physician treated the claimant, the length of the treating relationship and the frequency of examination, the evidence the physician presents to support his or her opinion, and whether the physician's opinion is consistent with the record as a whole. See 20 C.F.R. §§ 404.1527(c), 416.927(c).

An ALJ may discount or reject the opinion of any doctor if the opinion is not accompanied by objective medical evidence or is wholly conclusory or is inconsistent with the doctor's treatment notes or other record evidence. See 20 C.F.R. §§ 404.1527(c)(3), (c)(4), 416.927(c)(3), (c)(4); Hunter v. Soc. Sec. Admin., Comm'r, 808 F.3d 818, 823 (11th Cir. 2015); Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159–60 (11th Cir. 2004); Phillips, 357 F.3d at 1240–41. However, an ALJ who discounts a treating physician's opinion must give good reasons for doing so. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c); Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). In determining whether an ALJ gave proper weight to a physician's opinion, a court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." Hunter, 808 F.3d at 818.

ALJ Casher specifically considered Dr. Coyle's "Ability to do Work-Related Activities" statement. Doc. 13-2 at 27 (R. 26) (citing Doc. 13-11 at 34–37 (R. 555–58)). ALJ Casher agreed with Dr. Coyle's opinion that Plaintiff would have no problems with her upper extremities in handling, fingering, and feeling. Id. at 28 (R. 27) (citing Doc. 13-11 at 36 (R. 557)). ALJ Casher also agreed Plaintiff should have no exposure to cold, pulmonary irritants, or hazards. Id. (citing Doc. 13-11 at 37 (R. 558)). However, the ALJ disagreed with Dr. Coyle's finding that Plaintiff could not lift more than ten pounds; could not stand for more than two hours; and had no ability to bend, balance, stoop, kneel, or crouch. Id. at 27 (citing Doc. 13-11 at 35–36 (R. 556–57)). ALJ Casher also disagreed with Dr. Coyle's finding of postural limitations and Plaintiff's need for four unplanned absences per month. Id. Ultimately, ALJ Casher gave Dr. Coyle's opinions only partial weight because they were inconsistent with other examinations and the weight of the medical record as a whole. Id. at 28 (R. 27).

In assessing the medical record as a whole, ALJ Casher relied on a number of examinations. The ALJ took note of an October 7, 2015 MRI test conducted by Dr. Louis Horn, which showed moderate stenosis at the L3-4 area and mild stenosis at the L4-5 area. Id. at 27 (R. 26). By contrast, an October 19, 2015 post-operative MRI test, also conducted by Dr. Horn, indicated resolution of Plaintiff's large disc herniation in L3-4. Id. (citing Doc. 13-11 at 27 (R. 548)). Dr. Horn did, however, note Plaintiff had facet arthropathy at L3 and L4-5 and still experienced back pain. Id. Dr. Horn also indicated that Plaintiff was not having much radicular pain and that she did have a "a lot" of sitting tolerance. Id. The ALJ also took note of an October 19, 2015 neurological examination which showed 5/5 strength in the lower extremities, normal gait, and negative straight leg raise. Id. (citing Doc. 13-11 at 28–29 (R. 549–50)). The ALJ also referred to a November 4, 2015 MRI which showed improvement and an April 20, 2017 MRI which showed a "very stable lumber spine." Id. ALJ Casher also relied upon a July 11, 2017 exam which showed 5/5 strength in the upper and lower extremities, normal gait, and no motor sensory deficits. Id. The ALJ concluded that all of these exams contributed to the conclusion that Plaintiff was no longer disabled beginning October 20, 2015. Id.

In determining what the overall record reflected and whether Dr. Coyle's findings were consistent with that record, ALJ Casher also relied on the opinions of state agency consultative doctors, Drs. Lesesne and Muoneke. Id. at 24 (R. 23). Although Drs. Lesesne and Muoneke did not personally examine Plaintiff, they reviewed her records in forming the opinions contained in their September 9, 2015 report. Doc. 13-3 at 2–10 (R. 62–73). While the ALJ is not bound by the findings of State agency consultants, the Social Security Regulations state their opinions should be considered where appropriate "because our [] State agency [] consultants are

highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a. Contrary to the findings of Dr. Coyle, Drs. Lesesne and Muoneke found Plaintiff could occasionally lift or carry 20 pounds; stand or walk six hours in an eight-hour workday; occasionally climb ramps, stairs, ladders, ropes, and scaffolds; frequently balance; and occasionally stoop, kneel, crouch, and crawl.   Doc. 13-3 at 9–10 (R. 69–70).

In all, ALJ Casher reviewed several MRIs and other examinations, as well as the reports of State agency consultants, in finding Plaintiff was no longer disabled as of October 20, 2015. As part of this finding, ALJ Casher gave Dr. Coyle's opinions only partial weight because of the inconsistencies between Dr. Coyle's opinions and the record as a whole, and the ALJ provided reasons for doing so.   Doc. 13-2 at 27 (R. 26).   Substantial evidence supports the ALJ's decision to give only partial weight to Dr. Coyle's opinions.   Thus, this enumeration of error is without merit.

## VI. Whether Substantial Evidence Supports ALJ Casher's Consideration of the Third-Party Statement of Mr. McCarty

Plaintiff argues the ALJ improperly failed to consider the statement of Paul McCarty, Plaintiff's long-time boyfriend.   Doc. 17 at 18–20.   Plaintiff claims Mr. McCarty's statement was consistent with Dr. Coyle's opinion that Plaintiff was disabled after October 19, 2015.   Id. Defendant contends Mr. McCarty's statements were not due any special significance or consideration.   Doc. 18 at 12.

Under the Regulations, the Social Security Agency may consider evidence from sources, other than acceptable medical sources, to show the severity of a plaintiff's impairments and how they affect her ability to work.   See 20 C.F.R. §§ 404.1502, 404.1513(a)(4), 416.902, 416.913(a)(4).   The Regulations specifically include in the definition of non-medical sources information coming from "family members, caregivers, friends, neighbors, employers, and

14

clergy." 20 C.F.R. § 404.1502(e)(4). When assessing evidence from non-medical sources, the Regulations do not require the ALJ to address or explain his evaluation of the source. Instead, the Regulations only require that "the adjudicator generally should explain the weight given to [these] opinions," where "such opinions may have an effect on the outcome of the case." 20 C.F.R. § 404.1527(f)(2); see also Miles v. Soc. Sec. Admin., Comm'r, 469 F. App'x 743, 745 (11th Cir. 2012) ("[A]n ALJ has no duty to give significant or controlling weight" to opinions from non-medical sources.).

Mr. McCarty's statement describes his view of Plaintiff's general disposition, her limitations, and how these limitations affected certain aspects of her daily life. Doc. 13-7 at 5 (R. 303). Plaintiff argues the ALJ improperly failed to consider this statement. Doc. 17 at 18–20. While it is true the ALJ made no reference to McCarty's statement in his decision, the ALJ considered, and extensively described, similar (and more detailed) statements from Plaintiff and her mother.[2] Doc. 13-2 at 26–27 (R. 25–26). In discounting these statements, the ALJ explained they were "not entirely consistent with the medical evidence and other evidence in the record." Id. at 27 (R. 26). "[W]here the ALJ rejects a witness's testimony without providing germane reasons, but has already provided germane reasons for rejecting similar testimony, we cannot reverse the agency merely because the ALJ did not 'clearly link his determination to those reasons.'" Molina v. Astrue, 674 F.3d 1104, 1121 (9th Cir. 2012) (quoting Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001)). Further, "if an ALJ has provided well-supported grounds for rejecting testimony regarding specified limitations, [the Court] cannot ignore the ALJ's reasoning and reverse the agency merely because the ALJ did not expressly discredit each

---

[2] Additionally, at the hearing, Plaintiff described the role her boyfriend plays in assisting her in her daily life. Doc. 13-2 at 52 (R. 51). These statements largely mirror what is stated in Mr. McCarty's letter. The ALJ was aware of Plaintiff's limitations in her daily life and how Mr. McCarty purportedly assisted her.

15

witness who described the same limitations." Id. "Giving full effect to the ALJ's reasoning does not require [the Court] to consider whether the undiscussed lay witness was credible or not credible." Id.

Here, the ALJ was not required to expressly discuss Mr. McCarty's statement in his decision, as ALJ Casher had already considered similar and more detailed testimony from Plaintiff and her mother and provided specific reasons for discrediting that testimony. See De Olazabal v. Soc. Sec. Admin., Comm'r, 579 F. App'x 827, 832 (holding ALJ was not required to discuss report of plaintiff's husband in part because husband's report was merely cumulative of plaintiff's testimony and the medical evidence); Iordan v. Comm'r, Soc. Sec. Admin., 579 F. App'x 775, 779 (11th Cir. 2014) (holding ALJ did not err in not mentioning testimony of claimant's fiancée, which was either duplicative of or contradictory to other evidence and did not offer any new or relevant evidence, and remand to have ALJ explicitly address testimony would be a waste of judicial resources because testimony did not undermine substantial medical evidence supporting ALJ's determination). Plaintiff's enumeration of error is without merit.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **AFFIRM** the decision of the Commissioner and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **14 days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.

See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).   A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.   Objections not meeting the specificity requirement set out above will not be considered by a District Judge.   A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.   Appeals may be made only from a final judgment entered by or at the direction of a District Judge.   The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 5th day of March, 2020.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA